UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MELODY L. WILLIAMS, | : | Case No. 3:15-cv-388 |
|---|---|---|
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| OHIO DEPARTMENT OF REHABILITATIONS AND CORRECTIONS, et al., | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Melody L. Williams is a former inmate at the Dayton Correctional Institution (DCI).  She is currently incarcerated at the Ohio Reformatory for Women. She brings this case *pro se* under 42 U.S.C. §1983 partly claiming that Defendants violated her constitutional right of access to the courts and retaliated against her for exercising her constitutional right of access to the courts.  The violations and retaliation occurred, she asserts, during her past incarceration at DCI.  Defendants are Gary Mohr, Director of the Ohio Department of Rehabilitations and Corrections; Wanza Jackson, Warden of DCI; and John Mobley, librarian at DCI.

The case is pending on Williams's Motion for Summary Judgment (Doc. #62), Defendants' Memorandum in Opposition Motion for Summary Judgment (Doc. #72),

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Williams's Response in Opposition (Doc. #76), Defendants' Motions to Strike and the parties' related Memoranda (Doc. #78, 79, 80, 81, 82), and the record as a whole.

## II.  Cross-Motions for Summary Judgment

When, as here, parties have filed cross-motions for summary judgment, the Court grants or denies each motion for summary judgment on its own merit, applying the standards described in Fed. R. Civ. P. 56. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991).

A party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Barker v. Goodrich,* 649 F.3d 428, 432 (6th Cir. 2011).  To resolve whether a genuine issue of material fact exists, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Richland Bookmart, Inc. v. Knox County, Tenn.,* 555 F.3d 512, 520 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986)).  With these reasonable inferences in the forefront, "[t]he central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter,* 488 F.3d 397, 402-03 (6th Cir.2007) (quoting, in part, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)).  "Accordingly, '[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Whitfield v. Tennessee,* 639 F.3d 253, 258

(6th Cir. 2011) (citations omitted).  An insufficient showing by the moving party cannot prevail, even if its factual underpinnings have not been challenged by the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153-61 (1970).  "'The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as submitted for final resolution on a stipulated record.'"  *Id.* (citations omitted).  Yet, "[s]ummary judgment is 'an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.' rather than a 'disfavored procedural shortcut.'"  *Cincom Systems, Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009) (quoting, in part, *Celotex,* 477 U.S. at 327) (other citation omitted).

## III.  Williams's Allegations and Claims

There is no dispute between the parties in the present case over the fact that DCI provides its inmates with access to a law library.  Williams's overarching claim is that DCI's library is so inadequate it denied her right of access to the courts.  She grounds this on the following:

1. DCI's law library fails to provide assistance from persons trained in the law.

2. It fails to provide self-help manuals to instruct inmates on how to use the law books.

3. It fails to provide adequate space at it only seats 24 inmates at a time, and there are no law-library hours, thus denying seats for inmates needing legal access.

3

4. General-populate inmates are not given access to the law library. They are allowed less than 10 hours a week in the law library. There are no morning hours. Although the library is open during afternoon and dinner hours, inmates must choose between eating and working on legal matters.

5. The library fails to provide adequate staffing because it is closed during Defendant Mobley's vacations, sick days, and other scheduled absences. Inmates are unable to print or save the work when Defendant Mobley is absent.

6. The library fails to provide adequate access to level-3 inmates. They were only given access to the library for less than 45 minutes a week; no law books were brought in and inmates were unable to meaningfully research the law and prepare legal documents needed to file in federal court—especially concerning habeas-corpus matters such as the one-year statute of limitations, exhaustion, and procedural default.

7. The contents of the law library are inadequate. Most of the law books are out of date and are kept secluded in Defendant Mobley's office away from inmates. There are not legal reporters and pocket parts of various secondary sources are missing.

8. Inmates are denied access to a typewriter unless they buy their own typewriter ribbons, paper, and correction tape from the institution commissary. Indigent inmates are denied access to the courts because they cannot afford these items and therefore cannot use a typewriter. The library had, in times past, an abundance of typewriter ribbons available for similarly situated male inmates. Those ribbons disappeared when DCI changed to women inmates only.

9. Inmates are without legal resources and materials to meaningfully prepare and file legal matters and petitions for habeas-corpus relief. Inmates do not have access to a copy machine. All inmate legal documents must be turned over to Defendant Mobley who determines whether the documents meet copying rules. The copies are kept until he decides to make the requested copies and are returned at his discretion with pages missing and such pages are irreplaceable. This

policy is a breach of confidentiality, particularly when Defendant Mobley has access to Williams's legal defense team.

10. Inmates lack printing and word-processing capabilities from the legal computers and cannot print statutes, rules, and citations of authorities or legal forms.

11. The library recently (in 2015) provided a word processor for preparation of legal matters but inmates are not permitted to temporarily save legal documents such as briefs, pleadings, and complaints. Inmates are only allowed to use the legal computers 1 hour a day. Inmates who are school students are allowed to indefinitely save resumes and classwork.

12. Inmates must send all legal documents to Defendant Mobley's desktop computer to be printed, thus depriving them of confidentiality and the ability to do their own legal work. Inmates cannot print when Mobley is not present in the library even if the library is open.

*See* Doc. #23, *PageID* #s 358-62; *see also* Doc. #62.

Williams further asserts that Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment by denying her the same rights of access to the courts that they had previously afforded similarly-situated former male inmates at DCI and other state prisons. She alleges that those male inmates had adequate resources, seating, established law-library hours, working typewriters with items necessary to use them, copy machines, printing capabilities, a state public defender, and inmates trained in the law. She also claims that the DCI policy requiring outgoing inmate legal mail be subject to filing fees withdrawn from inmate accounts and to be left open in breach of confidentiality. Williams lastly maintains that Defendant Mobley retaliated against her with malicious and evil intent by subjecting her to a conduct report and banning her from the law library for two weeks (beginning on September 16, 2013). She also asserts,

among other things, that Defendant Mobley's acts in depriving her of access to the court by way of the above actions and inactions, *supra*, pp. 3-5, constitute retaliation against her for seeking constitutionally adequate access to the courts.

## IV. Exhaustion

Defendants contend that they are entitled to summary judgment because Williams failed to exhaust her administrative remedies.

Inmates seeking to challenge the conditions of their confinement under 42 U.S.C. §1983 must properly exhaust all available administrative remedies before pursuing relief in court. 42 U.S.C. §1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Booth v. Churner*, 532 U.S. 731, 733-34 (2001). This is so even when the possible administrative remedies include some form of relief but not money damages. *Booth*, 532 U.S. at 734. "When a prisoner fails to exhaust his [or her] administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate." *Hopkins v. Ohio Dept. of Corrections*, 84 F. App'x 526, 527 (6th Cir. 2003) (citing 42 U.S.C. §1997e(a); *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)). To properly exhaust administrative remedies "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA [Prison Litigation Reform Act], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting, in part, *Woodford*, 548 U.S. at 88).

The prison grievance procedure in Ohio administrative law consists of three steps inmates must take: "the presentation of an informal complaint to a staff member with

jurisdiction over the matter, a formal grievance filed with the Office of the Institutional Inspector at the correctional institution where the problem arose, and an appeal to the Chief Inspector of the Ohio Department of Rehabilitation and Correction." *Clements v. Caudill*, 48 F. App'x 996, 997 (6th Cir. 2002) (discussing Ohio Admin. Code §5120-9-31); *see* Doc. #72, *PageID* #s 812-14.

In support of their contention that Williams has failed to exhaust her administrative remedies, Defendants rely on the Declaration of Antonio Lee, an Assistant Chief Inspector for the Ohio Department of Rehabilitation and Correction. One of Lee's job duties is handling appeals by inmates who have pursued grievances. Lee is also custodian of the records from those appeals.

Lee states that he reviewed Williams's grievance and appeal records "to determine if she had exhausted any grievances regarding the law library and/or associated resources at the Dayton Correctional Institution." (Doc. #72, *PageID* #814, ¶12). His review revealed that out of the 50 grievances Williams filed between June 3, 2013 and February 8, 2016, she "only once completed the third step of the grievance system, which was denied for being untimely …." *Id.* at ¶13.

In response, Williams has not produced affirmative evidence tending to contradict Lee's Declaration. Because the case is presently at the summary-judgment stage, and because Defendants have produced evidence showing Williams has not exhausted her administrative remedies, she must present affirmative evidence sufficient to create a genuine issue over the facts Lee sets forth in his Declaration. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003); *see also Street v. J.C. Bradford & Co.,* 886 F.2d

7

1472, 1479 (6th Cir. 1989) (nonmovant must "present affirmative evidence in order to defeat a properly supported motion for summary judgment,"). She has not done so. As a result, there is no genuine issue over the fact that Williams completed the administrative proceedings on one occasion from June 3, 2013 to February 18, 2016 and that her appeal to the Assistant Chief Inspector was untimely. Additionally, Williams has not otherwise presented affirmative evidence showing that a genuine dispute exists over whether she properly exhausted her administrative remedies.

Accordingly, Defendants are entitled to summary judgment on Williams's claims. Nevertheless, even if Williams had properly exhausted her administrative remedies with regard to her main claim—that Defendants violated her constitutional right of access to the courts—this claim is fatally flawed.

## V. Access to the Courts

An inmate's right of access to courts arises, in the main, from the First Amendment's guarantee of the right to "petition the Government for a redress of grievances." *Hill v. Dailey*, 557 F.3d 437, 438 (6th Cir. 2009) (quoting U.S. Const. amend I) (other citation omitted). This is a "fundamental constitutional right … [that] requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977); *see Lewis v. Casey*, 518 U.S. 343, 346 (1996).

There is no dispute, genuine or otherwise, in the present case that DCI provided a law library to Williams during the time she was incarcerated there. Williams's claims

allege many inadequacies of DCI's law library. But, "[t]he right of access guarantees access to the *courts,* not necessarily an adequate prison law library." *Leveye v. Metro. Pub. Def. Office*, 73 F. App'x 792, 794 (6th Cir.2003) (emphasis in original) (citing *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir. 1985)). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting, in part, *Bounds*, 430 U.S. at 825). Indeed, there is no "abstract, freestanding right to a law library or legal assistance …." *Lewis*, 518 U.S. at 351.

Williams' claims can be reasonably read to advance the theory that Defendants violated her (and other DCI inmates') abstract, freestanding right to a law library or legal assistance. Williams's assertion of this claim fails as a matter of law because no such abstract, freestanding constitutional right exists. *See id*. To advance her claim that Defendants violated her constitutional right of access to the courts, Williams "must … go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered [her] efforts to pursue a legal claim." *Id*. This cannot be accomplished "simply by establishing that [DCI's] law library or legal assistance program is sub-par in some theoretical sense." *Id.*; *see Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). "In other words, 'only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action.'" *Chapman v. Mohr*, 2013 WL 3900395, at *3 (S.D. Ohio 2013) (Dlott, C.J.; Bowman, M.J.) (quoting *Hadix,* 182 F.3d at 405-06 (6th Cir. 1999) (citing *Lewis,* 518 U.S. at 353 & n. 3).

9

Defendants contend that they are entitled to summary judgment because Williams has not shown she suffered actual injury or prejudice to her non-frivolous claims.

Williams alleges that because she was not given access to a typewriter when she was a Level-3 inmate (until July 2014), she was forced to withdraw her petition for a writ of habeas corpus from the Ohio Supreme Court because it refused to accept any work that was not typewritten. Williams, however, has attached to her Amended Complaint a June 16, 2014 letter she received from the Clerk's Office of the Ohio Supreme Court. The letter explains that her motion for appointment of counsel was not filed "because it does not comply with the Rules of Practice of the Supreme Court of Ohio. Specifically, it does not contain or have attached to it the certificate of service that is required by Rule 3.11(C). Please note that Rule 3.11(A) require you to send a copy of it to the counsel representing the State of Ohio in your case." (Doc. #23, *PageID* #373). In light of this letter, there is no genuine dispute that it was Williams's failure to attach a certificate of service to her motion—not that it was handwritten—that caused her the filing problem in the Ohio Supreme Court. The letter, moreover, explained to Williams, "documents may only be handwritten in an emergency…." *Id*. The letter thus provided Williams with an emergency option to file her handwritten motion. Rather than choosing this option, she withdrew her motion. As a result, no reasonable juror could find an actual injury or prejudice from DCI's failure to provide her with a typewriter.

In addition, a review of public records concerning the cases Williams filed with the Supreme Court of Ohio does not suggest that her lack of success was due to any inadequacy in DCI's law library or its procedures. For instance, in Supreme Court case

10

number 2014-1384,[2] Williams filed a cogent and mostly typewritten jurisdictional memorandum with citations to case law and the claim that her counsel provided ineffective assistance in violation of her constitutional rights. Her Petition demonstrates that she was provided access to the courts. Additionally, the Ohio Supreme Court declined to accept jurisdiction over her appeal under Ohio S. Ct. Prac. R. 7.09(B)(4) (providing that jurisdiction may be declined for an appeal lacking "a substantial constitutional question," etc.). The alleged inadequacies of DCI's law library and personnel caused her no actual injury or prejudice in that case. *See State of Ohio v. Williams*, No. 2014-1384 (Ohio S.Ct.). And the same lack of actual injury or prejudice adheres to other matters she filed with the Ohio Supreme Court,[3] without which Williams cannot show a violation of her right of access to the courts. *See Lewis*, 518 U.S. at 354 (right of access to the courts does not require state to ensure an inmate "litigate effectively once in court."); *Hill*, 557 F.3d at 439 (same).

Williams also suffered no actual injury or prejudice in the habeas-corpus cases or mandamus action she has filed in the U.S. District Courts for the Southern and Northern Districts of Ohio. *See Williams v. Jackson*, No. 3:15cv113 (S.D. Ohio) (Rose, D.J.; Merz, M.J.); *Williams v. State of Ohio*, No. 3:15cv2402, 2016 WL 787953 (N.D. Ohio Feb. 18, 2016) (Carr, D.J.); *Williams v. Lisah,* No. 3:14cv2472 (N.D. Ohio) (Helmick, D.J.).

---

[2] Taking judicial notice of the Ohio Supreme Court's public records concerning Williams's cases is warranted. *See* Fed. R. Evid. 201(b)(2). Those records are available on the Supreme Court of Ohio's website, which provides a database of cases and documents searchable by case number. *See generally*, www.supremecourt.ohio.gov.

[3] *See State of Ohio v. Williams*, Nos. 2014-1016, 2014-1019 (habeas petitions dismissed); Nos. 2014-0024, 2014-0903 (Williams's applications for dismissal granted).

11

The records in those cases show that she frequently filed meaningful documents in a thorough effort to advance her claims with no ensuing actual injury or prejudice from any of the inadequacies at DCI that she alleges in the present case. *See Lewis*, 518 U.S. at 354 (right of access to the courts does not require state to ensure an inmate "litigate effectively once in court."); *Hill*, 557 F.3d at 439 (same).

Accordingly, Because there is no genuine dispute over the material facts concerning Williams's lack of an actual injury or prejudice, Defendants are entitled to summary judgment on Williams's claim that they violated her constitutional right of access to the courts.

### IT IS THEREFORE RECOMMENDED THAT:

1. Williams's Motion for Summary Judgment (Doc. #62) be denied;
2. Defendants' Motion for Summary Judgment (Doc. #72) be granted;
3. Defendants' Motions to Strike (Doc. #s 78, 82) be denied as moot; and
4. The case be terminated on the Court's docket.

January 22, 2018                                    *s/Sharon L. Ovington*
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).